#27461-a-JMK

**2016 S.D. 79**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

BROOKE ALLISON SCHREMPP,              Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JONI M. CUTLER
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PATRICIA ARCHER
Assistant Attorney General
Pierre, South Dakota                           Attorneys for plaintiff
                                and appellee.


JASON R. ADAMS of
Tschetter & Adams Law Office, PC
Sioux Falls, South Dakota                     Attorneys for defendant
                                and appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 29, 2016

OPINION FILED **11/22/16**

#27461

KERN, Justice

[¶1.]     Defendant was indicted for eight drug-related offenses in March 2014 and convicted of seven of the eight counts. On appeal, defendant contends she is entitled to a new trial because the trial court erred by amending the indictment the day prior to trial. Defendant also argues she was prejudiced when the trial court failed to notify the parties of a jury question that arose during deliberations and then answered the question without input from the parties. We affirm.

## Background

[¶2.]     Brooke Schrempp resided in Sioux Falls with her boyfriend, Christopher Uhing. The residence was located within a drug-free zone. Sioux Falls Area Drug Task Force Detective John Spaeth obtained a warrant for the search of the home after receiving numerous tips and other information that the occupants were dealing drugs. During the search of the home, officers found evidence of drug use and distribution. The officers found more than a half pound of marijuana, drug paraphernalia, pipes, digital scales, jeweler's baggies, and other packaging materials. Additionally the officers found equipment and supplies for a marijuana growing operation. The officers also discovered items used to manufacture hashish. Such supplies included capped tubes with holes drilled in the caps. One tube was packed with marijuana. The search also produced 44 empty cans of butane and large bags used to filter marijuana to make hashish.

[¶3.]     Later that day, Sioux Falls Police located Schrempp at her place of employment and arrested her. Schrempp received and waived her *Miranda* rights and told the police that she lived at the residence with her boyfriend Uhing. She

-1-

stated that she liked to smoke marijuana and admitted that she was selling both marijuana and hashish. During the interview Schrempp admitted that she had also made hashish or "concentrate" and explained the process.

[¶4.] At trial Detective Spaeth testified that the active ingredient in marijuana is Tetrahydrocannabinol (THC). Detective Spaeth explained that one method of making hashish involved packing marijuana into tubes and flushing butane through the leaves causing a resin or wax like substance to come out of the bottom of the tube. The resin is known as hashish. Hashish is also referred to by the slang terms "honey oil," "dab," or "concentrate."

[¶5.] The State charged both Schrempp and Uhing as codefendants with eight drug-related offenses: possession of one-half pound but under one pound of marijuana (SDCL 22-42-6); possession with intent to distribute or dispense more than one-half pound but less than one pound of marijuana (SDCL 22-42-7); possession of a controlled substance, hashish (SDCL 22-42-5); possession of a controlled substance, cocaine (SDCL 22-42-5); maintaining a place where drugs are kept, sold, or used (SDCL 22-42-10); possession with intent to distribute or dispense more than one-half pound but less than one pound of marijuana (SDCL 22-42-7) in a drug-free zone (SDCL 22-42-19); possession with intent to manufacture controlled substance, hashish (SDCL 22-42-2); and possession or use of drug paraphernalia, digital scales (SDCL 22-42A-3). The case was scheduled for a three-day jury trial beginning on February 4, 2015.

[¶6.] The day before trial, the court held a pretrial motions hearing. At this hearing, the State noted that it had corresponded with defense counsel about an

amendment to the indictment. After receiving the chemist's test results, the State discovered that Counts 3 and 7 of the indictment should have referenced "Delta-9-Tetrahydrocannabinol" instead of "hashish." The State sought an amendment to correct the language in these two counts. Schrempp did not object. With the parties consent the trial court amended the counts by crossing out the word "hashish" and adding "Delta-9-Tetrahydrocannabinol AKA Hashish" in the margins along with the court's initials and date.

[¶7.] The case was submitted to the jury for resolution on February 6, 2015. During deliberations, the jury submitted a written question to the court stating, "Can we get the portion of Detective Spaeth's testimony regarding [Schrempp's] initial interview after arrest?" The trial court did not notify the parties that a question had been received from the jury. Instead, the court sent the jury the preliminary jury instructions highlighting a portion of Instruction Number 4. The highlighted portion read, "At the end of the trial, you must make your decision based upon what you recall of the evidence. You will not have the written transcript to consult, and the court reporter will not be required to read back lengthy testimony. Therefore, you should pay close attention to the testimony as it is presented." After the jury reached a verdict, the trial court informed counsel on the record of the question and the court's method of answering the question. Schrempp did not object to the action taken by the trial court.

[¶8.] The jury convicted both Schrempp and Uhing on all counts with the exception of Count 4. The court sentenced Schrempp for the seven offenses to a combined total of 29 years in the South Dakota State Women's Prison and 30 days

in the Minnehaha county jail. However, the court suspended all but 6 years and 30 days of the prison sentence and ordered that Schrempp's 30 day sentence in the county jail be served concurrently.

[¶9.]     Schrempp appeals her conviction, arguing two issues:

1.     Whether the trial court erred by amending the indictment the day prior to trial.

2.     Whether the trial court committed plain error by not informing the parties of the jury's question at the time it occurred.

### Decision

[¶10.]     *1.     Whether the trial court erred by amending the indictment the day prior to trial.*

[¶11.]     Schrempp contends that the trial court's amendment of the indictment constitutes reversible error. She argues that there was no evidence presented that Delta-9-Tetrahydrocannabinol and hashish are the same substance; thus, the amendment could have been confusing to the jury.[1] In response, the State contends that Schrempp not only waived the issue, but "agreed with and acquiesced to the very action she now challenges." (Emphasis omitted.) It is undisputed that Schrempp did not object to the trial court's amendment during the motions hearing. While this failure would normally waive consideration of the issue on appeal, *State v. Anderson*, 1996 S.D. 46, ¶ 17, 546 N.W.2d 395, 400 (citing SDCL 23A-8-3(3)),

---

1.     SDCL 34-20B-1(9) defines hashish, as "the resin extracted from any part of any plant of the genus cannabis, commonly known as the marijuana plant." Hashish is listed as a schedule I drug in SDCL 34-20B-14 (10). Tetrahydrocannabinol, other than that occurring "in marijuana in its natural and unaltered state," is listed as a schedule I drug in SDCL 34-20B-(20) which subsection includes a number of other compounds.

Schrempp argues that the issue is jurisdictional—namely that the court lacked jurisdiction to make the amendments. Accordingly, Schrempp submits review is proper as "jurisdictional defects may be raised for the first time on appeal." *State v. Sanders*, 2016 S.D. 32, ¶ 3, 878 N.W.2d 105, 107 (quoting *State v. Neitge*, 2000 S.D. 37, ¶ 9, 607 N.W.2d 258, 260). Schrempp alternatively argues that the question could be reviewed under the plain error doctrine.

[¶12.] Schrempp mistakenly conflates a court's jurisdiction with a court's authority. The "elastic concept of jurisdiction" used by Schrempp "is not what the term 'jurisdiction' means today, *i.e.*, 'the courts' statutory or constitutional *power* to adjudicate the case.'" *United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 1785, 152 L. Ed. 2d 860 (2002) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89, 118 S. Ct. 1003, 1010, 140 L. Ed. 2d 210 (1998)). Because a defective indictment "does not affect the jurisdiction of the trial court to determine the case presented by the indictment," the United States Supreme Court "departed from . . . [the] view that indictment defects are 'jurisdictional.'" *Id.* at 631, 122 S. Ct. at 1781. The proper question, then, is whether the court had authority to amend the indictment.

[¶13.] Because Schrempp failed to object to the amendment during the motions hearing, we can only review for plain error. *State v. Bowker*, 2008 S.D. 61, ¶ 45, 754 N.W.2d 56, 69. Plain error review must be "applied cautiously and only in exceptional circumstances." *State v. Beck*, 2010 S.D. 52, ¶ 10, 785 N.W.2d 288, 293. To establish plain error, an appellant must show "(1) error, (2) that is plain, (3) affecting substantial rights; and only then may this Court exercise its discretion to

notice the error if (4) it seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *State v. Buchhold*, 2007 S.D. 15, ¶ 22, 727 N.W.2d 816, 822 (alteration in original). To establish that an error has affected substantial rights, "the error must have been prejudicial: It must have affected the outcome of the [circuit] court proceedings." *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993). Additionally, "with plain error analysis, the defendant bears the burden of showing the error was prejudicial." *Beck*, 2010 S.D. 52, ¶ 10, 785 N.W.2d at 293.

[¶14.] Schrempp cites *United States v. Sazenski* in support of her argument that circuit court judges are without authority to amend an indictment even with a defendant's consent. 833 F.2d 741, 743-44 (8th Cir. 1987) (citing *United States v. Norris*, 281 U.S. 619, 623, 50 S. Ct. 424, 425, 74 L. Ed. 1076 (1930)). While it is true as a general rule that courts may not amend indictments, "that rule is inapplicable when the change is one of form only." *United States v. Mason*, 869 F.2d. 414, 417 (8th Cir. 1989). Thus, the State argues that "where it was not a material change and was a clarification as to form," there is no plain error.

[¶15.] We have previously addressed the question of the validity of an amendment to an indictment. In *State v. Anderson*, we held that a "trial court has no inherent authority to amend an indictment in any material respect," but may amend an indictment "as to matters of form." 1996 S.D. 46, ¶ 11, 546 N.W.2d at 398. *See also Cotton*, 535 U.S. at 631, 122 S. Ct. at 1785 (holding courts have authority to amend indictments if the amendment is one of form only). "An indictment is sufficient if it 'contains the elements of the offense charged such that

it apprises the defendant with reasonable certainty of the accusations against him, and it must enable him to plead an acquittal of conviction as a bar to future prosecutions for the same offense.'" *State v. Smith*, 1999 S.D. 83, ¶ 25, 599 N.W.2d 344, 350 (quoting *State v. Darby*, 1996 S.D. 127, ¶ 8, 556 N.W.2d 311, 315). The test for determining the sufficiency of an indictment is whether it employs the language of the statute and enables a person of "common understanding to know what was intended." *State v. Younger*, 453 N.W.2d 834, 840 (S.D. 1990); *see also State v. Oster*, 495 N.W.2d 305, 307 (S.D. 1993). We review the question of whether an indictment is sufficient de novo. *State v. Fisher*, 2013 S.D. 23, ¶ 28, 828 N.W.2d 795, 803.

[¶16.]     The State argues that this case is similar to the North Carolina Court of Appeals' decision in *State v. Brady*, 557 S.E.2d 148, 151 (N.C. Ct. App. 2001). In that case, the court amended the indictment during trial, switching the drug in question from "Xanax" to "Percocet." The court held that the change was not substantive and that the defendant was not prejudiced by the change, even though the two drugs were in different schedules. *Id.* The court emphasized that the statute under which the prosecution charged the defendant remained the same and that the indictment was sufficient. *Id.* We are presented with a similar situation.

[¶17.]     In this case, the trial court crossed out the word "hashish" and replaced it with "Delta-9-Tetrahydrocannabinol aka hashish." Erin McCaffrey, a forensic analyst, testified that hashish is made by extracting the Delta-9-Tetrahydrocannabinol either chemically or physically by heating the marijuana. When asked by the prosecutor how she tested for "hashish or Delta-9-

Tetrahydrocannabinol," McCaffrey stated, "I usually physically observe *it*, look to see under a microscope to see if I see any green plant material in *it*[.]" (Emphasis added.) McCaffrey's usage of the singular pronoun in this context indicates that she would test for hashish or Delta-9-Tetrahydrocannabinol in the same way, which would indicate that they are at least related substances.

[¶18.]      As in *Brady*, the charge in this case remained the same, the statute remained the same, and the drugs are in the same schedule of controlled substances. The two terms were used interchangeably during the trial. The jury was correctly instructed as to the elements of the offenses of Counts 3 and 7 at trial. In *State v. Fisher*, we reaffirmed that an indictment may be amended when it does not change the elements of the offense. 2013 S.D. 23, ¶ 28 n.7, 828 N.W.2d 795, 803 n.7. Whether the drug in this case is technically known as hashish or by its chemical compound Delta-9-Tetrahydrocannabinol, the name is not an essential element of the offenses as both are controlled schedule I substances. *See id.*

[¶19.]      In light of these factors, the amendment made by the trial court was simply one of form. As such, the error, even if conceded, did not affect Schrempp's substantial rights, as Schrempp cannot show that she was prejudiced by the amendment. And "even assuming the error affected [Schrempp's] substantial rights, it did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Cotton*, 535 U.S. at 633, 122 S. Ct. at 1786. Therefore, the court did not commit plain error.

[¶20.]      2.      *Whether the trial court committed plain error by not informing the parties of the jury's question at the time it occurred.*

[¶21.]     Schrempp concedes that she did not object to the court's decision to answer the jury's question without informing her in advance and allowing her to comment on the manner in which the question was answered.  As the issue was not preserved for appeal, Schrempp requests that we analyze her claim under the plain error doctrine.  *State v. Hayes*, 2014 S.D. 72, ¶ 25, 855 N.W.2d 668, 675.

[¶22.]     Until 2006, trial courts were specifically required to notify parties of jury questions and to settle them in writing.  *Duda v. Phatty McGees, Inc.*, 2008 S.D. 115, ¶ 21, 758 N.W.2d 754, 760.  The rule required that "[t]he court must settle, in writing, pursuant to § 15-6-51(b), a response to a jury question sent out by the jury during deliberations."  SDCL 15-6-51(c) (amended July 1, 2006).  In 2006, the rules were changed to mirror Federal Rule of Civil Procedure 51, removing the requirement that the court explicitly inform the parties of the question and settle the question in writing.[2]  *Duda*, 2008 S.D. 115, ¶ 21, 758 N.W.2d at 760.  However,

---

2.     The  amended version of the rule provides:

> (1) A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection.
>
> (2) An objection is timely if:
>
>> (A) a party that has been informed of an instruction or action on a request before the jury is instructed and before final jury arguments, as provided by § 15-6-51(b)(1), objects at the opportunity for objection required by § 15-6-51(b)(2); or
>>
>> (B) a party that has not been informed of an instruction or action on a request before the time for objection provided under § 15-6-51(b)(2) objects promptly after learning that the instruction or request will be, or has been, given or refused.

(continued . . .)

as we cautioned in *Duda*, "it is still error even under the federal rule for a court to answer jury questions without giving the parties notice and an opportunity to be heard." *Id.*; *JAS Enters., Inc. v. BBS Enters., Inc.*, 2013 S.D. 54, ¶ 47, 835 N.W.2d 117, 130.

[¶23.]     This Court has previously addressed whether such an error warrants reversal in the civil context, but we have not done so in a criminal case. *See, e.g.*, *Duda*, 2008 S.D. 115, ¶ 21, 758 N.W.2d at 760. In *Meeks v. United States*, the Eighth Circuit Court of Appeals addressed the question in the context of criminal cases. 742 F.3d 841 (8th Cir. 2014). The court held that the trial court "must provide defense counsel with a meaningful opportunity to object before responding to questions asked by the jury after deliberations begin and '[c]ommunication between judge and jury in the absence of and without notice to the defendant creates a presumption of prejudice.'" *Id.* at 844 (quoting *Stewart v. Nix*, 972 F.2d 967, 971 (8th Cir. 1992)). However, a clear absence of prejudice dispels the presumption. *United States v. Anwar*, 428 F.3d 1102, 1114 (8th Cir. 2005). Additionally, a defendant does not have a right to be present for a jury question if the court "merely repeats instructions it has already given[.]" *Meeks*, 742 F.3d at 844.

[¶24.]     The circumstances of this case present a clear absence of any prejudice to Schrempp. It is undisputed that the trial court answered the jury's question in

---

(. . . continued)
        IT IS FURTHER ORDERED that this rule shall become effective July 1, 2006.

    2006 S.D. Sess. Laws Ch. 324 § SCR 06-50.

this case without informing the parties of the question or obtaining their input. This was an error on the part of the trial court judge. However, because Schrempp was given an opportunity to object and chose not to do so, she must now show that the error seriously affected her substantial rights and the integrity of the proceedings as required under plain error review. *Buchhold*, 2007 S.D. 15, ¶ 22, 727 N.W.2d at 822.

[¶25.] Schrempp has failed to make the necessary showing. Had the court informed the parties of the question, there is not a conceivable course of action Schrempp could have taken that would have in any way altered the outcome. The parties settled the jury instructions prior to trial. Preliminary Instruction number 4 informed the jury that they would not have a written transcript of the testimony to consult. In response to the jury's question, the court merely highlighted this instruction and gave it to the jury. We have previously held that the decision whether to provide further instruction to the jury rests in the sound discretion of the trial court. *State v. Holtry*, 321 N.W.2d 530, 531 (S.D. 1982). Referring the jury to instructions already given is not error. *See Meeks*, 742 F.3d at 844; *State v. Rhines*, 1996 S.D. 55, ¶ 178, 548 N.W.2d 415, 454. Because of the content of the question, it is unlikely that, even if the parties were properly noticed and given the opportunity to be heard, the court would have given a significantly different answer. Indeed, Schrempp has not proposed an alternative answer to the question. As such, there is no prejudice, and the outcome of the proceedings was unaffected. *See Olano*, 507 U.S. at 734, 113 S.Ct. at 1778.

## Conclusion

[¶26.]     The trial court neither erred by making an amendment to the indictment, nor can Schrempp show that her substantial rights were affected by the amendment.  Likewise, Schrempp has not established that, despite the court's error in not allowing the parties to participate in settlement of the answer to the jury's question, she was prejudiced or that the error affected the fairness of the proceedings.

[¶27.]     Affirmed.

[¶28.]     GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.