#30444-a-JMK
**2025 S.D. 30**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

RICHARD LEE HILLYER,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CRAIG A. PFEIFLE
Retired Judge

\* \* \* \*

CONOR DUFFY of
Duffy Law Firm
Rapid City, South Dakota                    Attorneys for defendant and
appellant.


MARTY J. JACKLEY
Attorney General

SHALE R. KRAMME
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff and
appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
JUNE 4, 2024
OPINION FILED **06/25/25**

#30444

KERN, Justice

[¶1.]        After a one-day jury trial, Richard Hillyer was convicted of possession of a weapon—an altered razor blade—by an inmate of a jail in violation of SDCL 24-11-47(3).  Hillyer appeals his conviction, arguing that the circuit court erred by rejecting his lesser-included offense jury instruction, denying his motion for judgment of acquittal based on insufficient evidence, and refusing to give an instruction telling the jury not to consider hypothetical uses of the razor blade.  Additionally, he asserts that the cumulative effect of these errors deprived him of a fair trial.  We affirm.

### Factual and Procedural Background

[¶2.]        In September 2022, while an inmate at the Pennington County Jail, Richard Hillyer checked out a jail-issued shaving razor.  Hillyer removed the blade from the plastic housing and broke the blade in half.  He flushed one-half of the razor blade down the toilet and wrapped the other half in tape and hid it in his mouth.  Hillyer maintains he kept the blade, not to injure anyone else, but only to cut himself, a practice he claims he has been doing since he was a teenager to relieve his anxiety.

[¶3.]        When Hillyer failed to return the razor to jail staff, they suspected he may have concealed it and moved him to a holding cell where he could be more closely observed.  On September 11, 2022, while speaking with Sergeant James Hogue, Hillyer admitted he had the razor blade, removed it from his mouth, and gave it to Sergeant Hogue.  Hillyer then told Sergeant Hogue that he had the blade to "manipulate housing"—to be moved to a cell where he would have a view of the

television.  The half of the razor blade Hillyer gave to Sergeant Hogue was turned over to Deputy Mooney with the Pennington County Sheriff's Office.  Hillyer told Deputy Mooney that he kept the razor blade to cut himself in an attempt to get moved to a different cell.  The other half of the razor blade was never found.

[¶4.]     Hillyer was charged with possession of weapons in jail, in violation of SDCL 24-11-47(3), a Class 2 felony.  The State filed an amended part II information, charging him as a habitual offender based on four prior felonies.  Hillyer pled not guilty and demanded a jury trial.

[¶5.]     At trial, the State called Sergeant Hogue who testified that razors are issued to inmates who are allowed approximately 45 minutes to shave, after which, they must turn in the razor.  He testified the process for checking razors out and back in is to make sure the razors are accounted for, as there is concern that inmates could use the razors for "nefarious actions such as making weapons." Sergeant Hogue testified that in his experience at the Pennington County Jail, he has seen inmates use razor blades in a variety of ways, including as a weapon.  He also testified that based on the condition of the razor blade when Hillyer removed it from his mouth, it could be used as a weapon by "holding it in your fingers to cut at somebody."  Sergeant Hogue explained:

> Holding a razor blade in your fingers is definitely – can be used as a weapon.  I don't want to – I don't want to find anybody that has a razor blade regardless of the size, you know.  I don't want to interact with somebody that may have a potential weapon of that sort.

Sergeant Hogue testified that to be "most effective" the razor blade would have to be attached to a handle, but that it could be used as a weapon without one.  The razor

blade that Hillyer possessed was admitted as an exhibit, passed around to the jury, and taken to the jury room during the jury's deliberations.

[¶6.]         After the State rested, Hillyer moved for judgment of acquittal, claiming there was no evidence the razor blade "was used to inflict death or serious bodily harm." Defense counsel stated the only evidence presented was that the razor blade was "designed to make small cuts on the insides of [Hillyer's] calves." Counsel argued:

> There has been no evidence presented in the State's case-in-chief that would satisfy the statutory definition of weapon for that razor blade. Even the sergeant testified that it would have to – something else would have to be attached for it to be effectively used as a weapon.
>
> Given that because this was not used as a weapon, it was not used in a manner that was likely to inflict death or serious bodily harm and it was not designed to do so, the State at this point has failed to meet its burden and I would ask for a judgment of acquittal because no reasonable juror could find that that piece of razor meets this definition.

The State argued that whether the razor blade met the statutory definition of dangerous or deadly weapon was for the jury to decide. The circuit court denied the motion for judgment of acquittal.

[¶7.]         Hillyer testified in his own defense and admitted that he made the "conscious choice to break the razor blade that the jail issued [to him]." He maintained that he never intended to hurt anyone else with the razor blade and that he broke the razor blade in half because he "only needed a little piece to cut [him]self." He admitted he made "some superficial cuts" on himself with the razor blade.

#30444

[¶8.]    When the circuit court and counsel settled the jury instructions, defense counsel proposed a lesser-included instruction for misdemeanor possession of an unauthorized item in jail, a violation of SDCL 24-11-47.1.[1]  The circuit court applied the elements test set forth in *State v. Willingham*, 2019 S.D. 55, 933 N.W.2d 619, in determining that the lesser-included instruction was not warranted, explaining:

> Number one, all the elements of the included offense are fewer in number than the elements of the greater offense.
>
> Number two, the penalty for the lesser-included offense must be less than that of the greater offense.
>
> And number three, both offenses must contain common elements so that the greater offense cannot be committed without committing the lesser offense.
>
> In this particular case, I don't believe the lesser-included instruction specifically meets element number 3, that there are common elements so that the greater offense cannot be committed without committing the lesser offense.  Specifically in this particular case, I think one can commit the greater offense without the operator of the jail facility providing a user the item and, as a result, I don't believe that it can be considered under the Supreme Court's most recent pronouncement a lesser-included offense of the crime as charged.

---

1.    This proposed instruction read:

> The elements of the crime of Possession of unauthorized articles in jail, each of which the state must prove beyond a reasonable doubt, is that at the time and place alleged:
>
> 1. The defendant was an inmate in the Pennington County Jail.
> 2. The defendant knowingly possessed an item that was provided to him by the operator of the jail, but which had been altered to accommodate a use other than the originally intended use of the item.

-4-

[¶9.] During deliberations, the jury sent a question to the court, asking, "[d]o we need to determine how the razor blade was used versus how it could be used hypothetically?" Defense counsel requested that the circuit court respond by telling the jury it was "absolutely not to consider anything hypothetically." The circuit court responded to the jury's question by referring them to the jury instructions that had already been given. The jury found Hillyer guilty of the offense charged—felony possession of unauthorized articles in jail. Hillyer entered an admission to the amended part II information, charging him as a habitual offender. The circuit court sentenced him to serve 25 years in the state penitentiary, with credit for time served in the Pennington County Jail. Hillyer appeals, raising the following issues:

1. Whether the circuit court erred in refusing his lesser-included instruction.

2. Whether the circuit court erred in denying his motion for judgment of acquittal.

3. Whether the circuit court erred in failing to instruct the jury not to consider hypothetical uses of the razor.

4. Whether the cumulative effect of the claimed errors deprived Hillyer of a fair trial.

### Analysis and Decision

### 1. *Whether the circuit court erred in refusing the lesser-included instruction.*

[¶10.] "We apply [the] de novo standard of review to the refusal of [a] proposed lesser-included instruction." *State v. Williams*, 2008 S.D. 29, ¶ 34, 748 N.W.2d 435, 446 (citation omitted). We also review de novo, questions of statutory

interpretation, "with no deference given to the circuit court's legal conclusions." *State v. Kurtz*, 2024 S.D. 13, ¶ 12, 4 N.W.3d 1, 4 (citation omitted).

[¶11.] Hillyer was charged with and convicted of possession of a weapon in jail, a violation of SDCL 24-11-47, which provides in relevant part:

> No . . . weapons as defined in subdivision 22-1-2(10), may be possessed by any inmate of a jail. . . . A violation of this section constitutes a felony pursuant to the following schedule:
> . . .
> (3) Possession of a weapon as defined in subdivision 22-1-2(10) is a Class 2 felony.

A "weapon" as defined in SDCL 22-1-2(10) is a "dangerous weapon" or "deadly weapon," which includes:

> any firearm, stun gun, knife, or device, instrument, material, or substance, whether animate or inanimate, which is calculated or designed to inflict death or serious bodily harm, or by the manner in which it is used is likely to inflict death or serious bodily harm[.]

[¶12.] Hillyer argues that the jury should have been instructed on the lesser offense of possession of an unauthorized item, a violation of SDCL 24-11-47.1, which provides:

> No cellular telephone, electronic communications device, tobacco product, or any other item not provided by or authorized by the operator of the jail facility may be possessed by an inmate of a jail. No item provided by or authorized by the operator of the jail facility may be possessed by an inmate of a jail if the item has been altered to accommodate a use other than the originally intended use of the item. A violation of this section constitutes a Class 1 misdemeanor.

[¶13.] In *Willingham*, the Court explained that a "lesser-included offense instruction is appropriate if the elements test is satisfied and there exists 'some evidence in support of such instructions[.]'" 2019 S.D. 55, ¶ 44, 933 N.W.2d at 630

-6-

(quoting *State v. Giroux*, 2004 S.D. 24, ¶ 5, 676 N.W.2d 139, 141). To satisfy this elements test, three factors must exist:

> (1) [A]ll of the elements of the included offense are fewer in number than the elements of the greater offense; (2) the penalty for the included lesser offense must be less than that of the greater offense; and (3) both offenses must contain common elements so that the greater offense cannot be committed without also committing the lesser offense.

*Id.* (quoting *Giroux*, 2004 S.D. 24, ¶ 5, 676 N.W.2d at 141).[2]

[¶14.]     "If evidence has been presented which would support a conviction of a lesser charge, refusal to give the requested instruction would be reversible error." *State v. Swan*, 2019 S.D. 14, ¶ 20, 925 N.W.2d 476, 481 (citation omitted). "[T]he question is not . . . whether there was sufficient evidence." *Id.* ¶ 15, 925 N.W.2d at 480 (citation omitted). "[W]hen a defendant's theory is supported by law and has some foundation in evidence, however tenuous, the defendant has a right to present it." *Id.* (citations omitted). However, "[i]t is unnecessary to assess whether some evidence exists in the record to support the instruction unless the elements test is met." *Willingham*, 2019 S.D. 55, ¶ 44, 933 N.W.2d at 630 (citation omitted).

[¶15.]     The State asserts that the first two factors of the elements test are met. However, the State argues that the third factor of the elements test—whether

---

2.  SDCL 24-11-47.1 is violated in two ways: (1) by possession of an *unauthorized* item such as a "cellular telephone, electronic communications device, tobacco product, or any other item not provided by or authorized by the operator of the jail"— an "unauthorized item violation" and (2) by possession of an *authorized* item that "has been altered to accommodate a use other than the originally intended use of the item"—an "altered articles violation." Here, we are concerned only with the second type of violation. Accordingly, our application of the elements test is confined to whether possession of an authorized item that has been altered is a lesser offense of SDCL 24-11-47.

both offenses contain common elements so that the greater offense cannot be committed without also committing the lesser offense—is not met because it is possible to violate the greater offense without violating the lesser offense. Hillyer, on the other hand, argues that the lesser-included instruction should have been given because the third factor of the elements test was satisfied. In Hillyer's view, this is so because a defendant in possession of a weapon in jail "automatically commits the lesser offense of possession of an unauthorized article in jail."

[¶16.]    The text of SDCL 23A-26-8 provides that "[a] defendant may be found guilty of an offense necessarily included in the offense charged[.]" The statute is virtually identical to Federal Rule of Criminal Procedure 31(c)(1) whose "necessarily included" language has been interpreted by the United States Supreme Court to require a comparison of the elements of each of the charges:

> [O]ne offense is not "necessarily included" in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c).

*Schmuck v. United States*, 489 U.S. 705, 716 (1989); *State v. Black*, 494 N.W.2d 377, 380 (S.D. 1993) (plurality) (applying *Schmuck's* elements test).

[¶17.]    Notwithstanding the parties' view that this case implicates only the third element of our lesser-included-offense test, the necessarily-included standard also implicates the first element. Both the first and third elements convey the core focus of an elements test and are consistent with *Schmuck*. *See State v. Hoadley*, 2002 S.D. 109, ¶¶ 61–62, 651 N.W.2d 249, 263 (stating the three-prong elements test and noting the "similar" *Schmuck* elements tests that uses the necessarily-

included standard to determine if the "elements of the lesser offense are a subset of the elements of the charged offense"). Our three-step test should be understood to require that all of the elements of the purported lesser offense must be contained within the elements of the greater offense. Here, they are not.

[¶18.] The essential elements of the possession of a weapon in jail offense set out in SDCL 24-11-47 simply require proof that a jail inmate possessed a weapon as defined by SDCL 22-1-2(10), which includes an instrument of a certain character or that is used in a certain manner. But the unauthorized articles in jail offense requires additional, different elements not contained in SDCL 24-11-47. Under the theory of criminal liability applicable to this case, SDCL 24-11-47.1 requires proof that the item possessed was originally provided or authorized by the operator of the jail facility and was then *altered* to accommodate a different use. SDCL 24-11-47, on the other hand, does not contain an element requiring proof that the prohibited instrument was altered.

[¶19.] Of course, under the particular facts of this case, the proof adduced at trial would support a conviction of both offenses, but that merely expresses a post hoc view of the evidence, not an application of the correct legal, elements-based inquiry. Because the elements of SDCL 24-11-47.1 are not a subset of the elements of SDCL 24-11-47, the unauthorized articles offense is not a lesser-included offense of the weapons possession offense.

[¶20.] This conclusion also makes practical sense. Since weapons are never authorized for a jail inmate, requiring circuit courts to treat SDCL 24-11-47.1 as a lesser-included offense effectively eliminates SDCL 24-11-47. But this overlooks

what seems like self-evident legislative intent. By enacting SDCL 24-11-47, the Legislature proscribed possession of certain contraband by jail inmates, not just weapons, but also unprescribed controlled substances, marijuana, and alcoholic beverages. The circuit court, therefore, correctly refused the lesser-included instruction.

### 2. Whether the circuit court erred in denying the motion for judgment of acquittal.

[¶21.] "We review a denial of a motion for judgment of acquittal de novo." *State v. Bolden*, 2024 S.D. 22, ¶ 39, 6 N.W.3d 238, 246–47 (quoting *State v. Seidel*, 2020 S.D. 73, ¶ 32, 953 N.W.2d 301, 313). "In measuring the sufficiency of the evidence, we ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Seidel*, 2020 S.D. 73, ¶ 32, 953 N.W.2d at 313) (other citation omitted). The Court "will not resolve conflicts in the evidence, assess the credibility of witnesses, or evaluate the weight of the evidence." *Id.* (quoting *Seidel*, 2020 S.D. 73, ¶ 32, 953 N.W.2d at 313). "Instead, 'we accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict.'" *Id.* (quoting *Seidel*, 2020 S.D. 73, ¶ 32, 953 N.W.2d at 313). "It is the jury's responsibility, not ours, 'to decide what conclusions should be drawn from evidence admitted at trial.'" *Id.* (quoting *State v. Strozier*, 2013 S.D. 53, ¶ 24, 834 N.W.2d 857, 865).

[¶22.] There are two elements the State was required to prove for the crime with which Hillyer was charged and convicted: (1) Hillyer was an inmate at the Pennington County Jail; and (2) Hillyer knowingly possessed a weapon as defined

in subdivision 22-1-2(10), to-wit: razor blade. Hillyer claims the evidence at trial was insufficient to support a finding that the razor was a weapon as defined in SDCL 22-2-1(10). In support, Hillyer focuses only on his subjective reason for altering and possessing the razor—to cut himself. However, SDCL 22-1-2(10) defines a weapon objectively. The determination is whether the instrument is "calculated or designed to inflict death or serious bodily harm" or whether by the manner the instrument is used is "likely to inflict death or serious harm." Hillyer's intended and actual use of the razor are irrelevant to the determination of whether the razor is a weapon.

[¶23.] The jury, which viewed the razor blade Hillyer possessed, could reasonably have concluded that it was calculated or designed to inflict death or bodily harm. A razor blade is unquestionably designed for the very purposes of cutting. Hillyer's razor blade could undeniably cut human skin; in fact, the jury saw the harm that Hillyer's razor blade caused on his own leg. Further, the jury heard the testimony from Sergeant Hogue, who testified that razors can be used as a weapon and can be used to make a weapon, and that he has seen them used as a weapon at the Pennington County Jail. The jury, considering the evidence in light of their own observations and experiences and using reason and common sense, as it was instructed, could reasonably find that Hillyer's razor blade was a weapon as defined in SDCL 22-1-2(10). Based on our review of the record and viewing the evidence in the light most favorable to the prosecution, we find there was sufficient evidence to permit a rational trier of fact to conclude the essential elements of possession of a weapon in jail were established beyond a reasonable doubt.

### 3. Whether the circuit court erred in failing to instruct the jury regarding hypothetical uses of the razor.

[¶24.] "Trial courts have considerable discretion in responding to jury requests during deliberations, and on appeal, their decision will not be disturbed except for abuse of discretion." *Time Out, Inc. v. Karras*, 469 N.W.2d 380, 384 (S.D. 1991) (citations omitted). *See also State v. Kaiser*, 504 N.W.2d 96, 101 (S.D. 1993) ("Trial judges have discretion in the handling of jury inquiries during its deliberations[.]"); *State v. Schrempp*, 2016 S.D. 79, ¶ 25, 887 N.W.2d 744, 750–51 ("[T]he decision whether to provide further instruction to the jury rests in the sound discretion of the trial court."). If the circuit court's answer provided to the jury was erroneous, Hillyer must establish prejudice, "to the point where the jury would probably have returned a different verdict if the court's answer had not been given." *State v. Moran*, 2003 S.D. 14, ¶ 71, 657 N.W.2d 319, 334; *State v. Cottier*, 2008 S.D. 79, ¶ 15, 755 N.W.2d 120, 128.[3]

[¶25.] "If the court in the exercise of sound discretion concludes that information or further instructions are not required, it may properly refuse such a request." *State v. Rhines*, 1996 S.D. 55, ¶ 178, 548 N.W.2d 415, 454 (citations omitted). Where, as here, the jury instructions are correct statements of the law, no

---

3.  The State argues that Hillyer should have proposed an instruction regarding hypothetical uses of the razor and should have objected to the instructions given. The State argues, therefore, Hillyer waived this issue for appeal, and must establish plain error. There is no requirement, however, that a defendant anticipate every question that may arise during jury deliberations and submit a proposed instruction on those unanticipated questions. *See e.g.*, *United States v. Southwell*, 432 F.3d 1050, 1053 (9th Cir. 2005) (recognizing "it is not always possible, when instructing the jury, to anticipate every question that might arise during deliberations"). Hillyer has not forfeited the issue and the plain error analysis does not apply.

further instruction is necessary, and the circuit court properly referred the jury to those instructions. *Schrempp*, 2016 S.D. 79, ¶ 25, 887 N.W.2d at 751 ("Referring the jury to instructions already given is not error."); *Rhines*, 1996 S.D. 55, ¶ 178, 548 N.W.2d at 454 ("[T]he instructions given by the trial court fully and accurately advised the jurors of the law governing the case. We can discern no error in simply referring the jurors to these instructions.").

[¶26.]     Hillyer next maintains that the circuit court's failure to instruct the jury not to consider hypotheticals raises a concern that the jury's verdict may not have been unanimous. "A defendant has a due process right to a unanimous jury verdict." *State v. White Face*, 2014 S.D. 85, ¶ 19, 857 N.W.2d 387, 393.

[¶27.]     Here, the jury instructions twice instructed the jury that its verdict must be unanimous, and when the circuit court asked the jury, "Ladies and gentlemen, is this your verdict?" the transcript reflects that the jury responded in the affirmative. Notably, Hillyer did not request additional instructions regarding the requirement of unanimity[4] and he declined the opportunity to poll the jury, which would have revealed any absence of unanimity. *Compare id.* ("Defense counsel made clear to the court that unanimity was a concern and requested an instruction on jury unanimity."). The jury was sufficiently informed that its verdict had to be unanimous through the jury instructions, which we presume the jury followed. *See United States v. Eagle Elk*, 820 F.2d 959, 961 (8th Cir. 1987) ("The

---

4.     Nothing in the record leads us to the conclusion that the circuit court should have sua sponte instructed the jury that unanimity was required. *See White Face*, 2014 S.D. 85, ¶ 19, 857 N.W.2d at 393 (indicating the trial court should instruct sua sponte on unanimity "when the evidence requires").

mere fact, however, that an instruction could conceivably permit a jury to reach a non-unanimous verdict is not sufficient to require reversal when the jury has been instructed that it must reach a unanimous verdict.") (citation omitted). *See also State v. Black Cloud*, 2023 S.D. 53, ¶ 43, 996 N.W.2d 670, 682 ("We presume that juries follow their instructions[.]") (citation omitted). Hillyer has not demonstrated that he was deprived of the right to a unanimous verdict.

## Conclusion

[¶28.]     We find that not all of the elements of the purported lesser offense are contained within the elements of the greater offense, and that the unauthorized articles offense is, therefore, not a lesser-included offense of the weapons possession offense. The circuit court correctly denied the lesser-included instruction. Further, we conclude that there was sufficient evidence to support the jury's guilty verdict, and the circuit court did not abuse its discretion by refusing to instruct the jury on hypotheticals. There is no evidence that Hillyer was denied a unanimous verdict. Because the circuit court did not err in any of the ways alleged by Hillyer, the Court concludes Hillyer received a fair trial, and the last issue on appeal—that the cumulative effect of alleged errors deprived him of a fair trial—is therefore without merit.

[¶29.]     Affirmed.

[¶30.]     JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.