#31189-a-PJD
**2026 S.D. 41**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

STATE OF SOUTH DAKOTA,                                 Plaintiff and Appellee,

v.

CHRIS DAVID KUJAWA,                                 Defendant and Appellant.

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

THE HONORABLE MATTHEW M. BROWN
Judge

DEREK D. FRIESE of
South Dakota Office of
    Indigent Legal Services
Sioux Falls, South Dakota                  Attorneys for defendant and
                                           appellant.


MARTY J. JACKLEY
Attorney General

RENEE STELLAGHER
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff and
                                           appellee.


CONSIDERED ON BRIEFS
APRIL 21, 2026
OPINION FILED **06/24/26**

#31189

DEVANEY, Justice

[¶1.]	Chris Kujawa was convicted of first-degree burglary and aggravated assault with a deadly weapon after he entered the home of David Jasper and threatened him with a handgun.  At trial, he sought to impeach Jasper with his prior felony convictions.  The circuit court allowed cross-examination of Jasper regarding his prior convictions, but not to the extent Kujawa requested.  On appeal, Kujawa claims the circuit court erred in this regard, and also alleges the court erred in the way it responded to a jury question.  We affirm.

**Factual and Procedural Background**

[¶2.]	Kujawa rented one of Jasper's storage units in Box Elder, where he worked on vehicles and stored his welding equipment and tools.  Jasper decided to sell the storage units and notified Kujawa that he would need to remove his personal property from the unit or make arrangements with the new owner.  Kujawa's personal property was still in the unit when the sale closed.

[¶3.]	Several months later, on January 6, 2025, Jasper was alone in his residence in Box Elder when someone knocked at his door.  When he opened the door, he saw Kujawa, who put a pistol to Jasper's head and forced his way through the door into the home.[1]  Kujawa told Jasper to "say [his] prayers and prepare to die for stealing all his stuff."  Jasper tried to explain that he did not steal Kujawa's property and that Kujawa needed to talk to the new owner of the storage units.  Kujawa ordered Jasper to turn around and drop to his knees, then kicked him in

_____

1.	These facts and the description of the events that follows were disputed at trial.  We relate the version that is consistent with the jury's verdict.

-1-

the back to lay flat on the floor, causing Jasper's glasses to fly off and his nose to bleed when his face hit the carpet. As Jasper lay on the floor with Kujawa's foot planted on his back, he heard Kujawa rack the slide of the gun and felt the gun pressed to the back of his head. Kujawa told him, "It's time for you to talk to your maker. I got one in the chamber. This is it, you're done." He stated that Jasper's wife "was next." At that point, Jasper thought he was going to die. After several minutes, Kujawa suddenly left the home, leaving Jasper on the floor.

[¶4.] Eventually, Jasper got up and called his wife, Deedee, telling her what happened. He was crying and sounded so panicked and scared that Deedee could hardly understand him. She later testified at trial that, in the 15 years they were together, she had "never heard him so upset" and "[h]e's never cried." When Deedee arrived home moments later, she found him sitting on the bed, shaking and crying. She called 911.

[¶5.] Law enforcement arrived soon thereafter, and Jasper was still sitting on the bed, shaking and crying as he described what happened. Box Elder Police Officer Stephanie Bright examined Jasper's back but did not see evidence of injuries, nor did she observe blood on his face or on the carpet. However, she did see what appeared to be a bloodstain on his sleeve. Jasper declined medical attention. He described the gun Kujawa was holding and what he was wearing.

[¶6.] Later, law enforcement found Kujawa at the residence of Oley Hansen, who lived within walking distance of the Jaspers. Kujawa was arrested and, when searched, did not have a firearm on him. The clothing he was wearing did not match the description Jasper had provided the officers. Officer Bright took him to

jail. Kujawa told her that he had been with Hansen that day and had gone with him to pay a bill but was dropped off at Hansen's house and did not go anywhere else that day. He admitted knowing Jasper and said he used to rent a storage unit from him, but he claimed he had not seen Jasper in months. Law enforcement obtained a warrant to search Hansen's house, but they did not find a gun matching the description Jasper provided.

[¶7.] Kujawa was charged by indictment with Count 1: first-degree burglary by entering or remaining in an occupied structure with intent to commit aggravated assault (SDCL 22-32-1(1)), and Count 2: aggravated assault by attempting by physical menace with a deadly weapon, to-wit: a firearm, to put Jasper in fear of imminent serious bodily harm (SDCL 22-18-1.1(5)).

[¶8.] A jury trial commenced May 5, 2025. After the jury was selected and excused for the day, the court and the parties addressed several matters. Defense counsel informed the court that Jasper has a criminal history and discussed the possible use of documentation for impeachment purposes if he denied having prior convictions. The next day, before the start of trial, Kujawa's counsel brought up an issue regarding Jasper's Triple I.[2] Counsel explained that Jasper's Triple I did not show prior felonies, but "it should." Defense counsel then provided the following information:

> There was a state and federal conviction. Both are felonies from 2002. However, his discharge from DOC wasn't until September of 2016. So I believe it falls within the 10 years. That was a

---

2. The State, in its brief, describes a Triple I as "the Interstate Identification Index (III), an FBI-maintained database containing criminal history records for individuals arrested or indicted for serious offenses."

grand theft, and he was essentially ordered to pay hundreds of victims in excess of a million dollars in restitution. To be blunt, Mr. Jasper's kind of a con man. And he took family heirlooms from people purporting to be able to fix them and took their money and did nothing and ended up getting some time and obviously having a substantial amount of restitution. *So I think it falls under 609(a)(2)*, that it's a dishonest act that must be allowed in but we wanted to address that one specifically beforehand because it's an older case. And I'm not sure that the State knows about it because the Triple I didn't have anything in it.

(Emphasis added.) Counsel provided the court with the case file number for the state conviction.

[¶9.] The State responded that it recently learned of Jasper's felony convictions and that Jasper would admit having them. Regarding the state grand theft conviction, the State argued that "you don't get to get into what caused it or how many victims or what was stolen. It's just the fact he has a felony conviction that covers a deceitful type act. So I believe he will admit on direct that he has the more recent federal felony as well as the grand theft felony." When asked by the court what the federal charge was, the State responded, "[i]t was possession of eagle feathers."[3]

[¶10.] Based on this information, the circuit court stated, "it appears in good faith you can ask him if he's got two felonies and one is a crime of dishonesty."

---

3. Defense counsel did not refute the State's description of the federal felony but noted that "[t]here is another federal case, but because it's sealed, it's connected to that grand theft, but I don't know what the charge was because the judgment's sealed." The exact nature, number, and date of conviction regarding any federal offenses was not provided to the circuit court, nor did defense counsel present arguments to the court regarding the federal conviction. Thus, it is unclear when Jasper's federal felony conviction occurred, and whether there was more than one.

Defense counsel asked "for a little more latitude with the grand theft, specifically" and argued that Jasper "is a con man that frequently doesn't pay people that he owes money and doesn't – swindles people out of money and has been doing that for years and he's very good at it and he's going to be very charismatic on the stand[.]" When the State objected that this was not permitted under SDCL 19-19-609 (Rule 609), defense counsel responded, "it's not simply a 609, it's a prior bad act as well. So we can get into the facts of what occurred if it goes to something other than character, which it would go to credibility in this case." The State suggested such evidence would constitute a "theft trial from 2022 [sic] in the middle of this trial that has nothing to do with . . . the fact that he had a gun pointed at him."

[¶11.] The circuit court then stated that, if Jasper "opens the door" by suggesting he does not "swindle people or [he is] a great guy and . . . never touched anybody else's stuff or whatever," then the issue could be revisited during trial. The court explained that, unlike the parties, it was not fully aware of the facts of the present case and could not assess whether the details of Jasper's prior conviction were relevant to this case. The court told the defense it was something they could discuss further during trial, if necessary, but the defense would have to provide further information and the court would "make a ruling at the time." The court reaffirmed that its initial ruling was that Jasper could not be asked what the crimes were, or what the details were.

[¶12.] During its case-in-chief, the State called Jasper, who described the details of the events in question as noted above. When asked if he had "two prior felonies," Jasper responded affirmatively. In response to the State's question

whether "one of those felonies [was] a crime of dishonesty from 2002," Jasper said "yes." On cross-examination, defense counsel asked Jasper if he had "some state convictions and some federal convictions," and he confirmed he did. Defense counsel then asked whether he had "convictions that are felonies that were actually crimes of dishonesty," and Jasper responded, "It was white collar, yes." Counsel began to ask a follow-up question but the State interrupted and requested a bench conference.

[¶13.] The parties and the court then had an off-the-record discussion, after which defense counsel continued by asking Jasper, "What is a white-collar crime?" This prompted another objection from the State. The court again held a bench conference and sustained the State's objection. Defense counsel asked Jasper if it was correct that "the initial crime" was in 2002 and Jasper confirmed that it was. When counsel asked whether Jasper was "released from DOC in 2016," the State objected on relevance grounds and the court sustained the objection. Defense counsel then started inquiring about Jasper's "second felony" and whether it was in 2018. The State objected to the line of questioning, noting that Jasper had "admitted under 609 and all of this is not relevant." The court sustained the State's objections.

[¶14.] Defense counsel next cross-examined Jasper about apparent inconsistencies between his account of the assault and his wife's statements during the 911 call that Jasper had been "pistol whipped" and was badly injured. Jasper acknowledged this did not happen but denied that he told Deedee it had. Counsel also questioned him about inconsistencies in what he told police about Kujawa

kicking in the door and the fact there was no physical evidence of damage to the door, as well as discrepancies in the number of times he said Kujawa kicked him. During further cross-examination, defense counsel suggested that the reason Kujawa went to Jasper's home was to discuss money that he claimed Jasper owed him, which Jasper denied.

[¶15.] The State called Deedee, who testified about the phone call she received from Jasper and his emotional state when she arrived home. During cross-examination, the defense again pointed to some inconsistencies between what she relayed during the 911 call and what Jasper testified to.

[¶16.] During a break in the proceedings, the court allowed the defense to make a record regarding the bench conference that occurred during Jasper's cross-examination. Counsel argued that Jasper's response about his prior felony being a "white collar crime" was an attempt to minimize his grand theft conviction and the defense should have been allowed to examine him further about what that case was, and what Jasper believed the term "white collar" meant. In presenting its arguments, defense counsel did not provide the court with any additional information about this prior case, as the court had instructed in its earlier ruling, nor did they argue the evidence was admissible under any alternative evidentiary rules. The State noted that, at the point the question was asked, Jasper had already admitted twice that he was convicted of a crime of dishonesty and argued "[t]hat is more than sufficient for purposes of what is allowed under [Rule 609(a)], and no further discussion on what his actual crimes are is needed for clarification." The court explained its ruling, noting that Jasper had admitted his crime of

dishonesty and that he "did not open the door" by referring to it as a white-collar crime and, therefore, additional inquiry surrounding the crime was not permitted.

[¶17.]     The State continued its case-in-chief, calling Officer Bright and another Box Elder Police Department officer, Gunner Grass, who both responded to Jasper's home and testified regarding Jasper's distraught demeanor.  Officer Bright also testified about what Kujawa had told her regarding his whereabouts on the day in question and when he had last seen Jasper.  Additionally, the State called Hansen, who said he knew both Kujawa and Jasper.  He testified that Kujawa stayed with him occasionally and had done so the night before the incident.  Hansen explained he had spent most of January 6 at the hospital where his wife was a patient, and that he had not done anything with Kujawa that day.  He testified that, at one point during the day, he went home and saw Kujawa walking toward Hansen's house.  Hansen testified that Kujawa told him about his encounter with Jasper.  According to Hansen, Kujawa said "he went down there to ask him for money and when he knocked on the door, [Jasper] fell on the floor" and "[s]tarted crying."  Kujawa told Hansen he did not collect any money from Jasper.

[¶18.]     After the State rested, the defense rested as well, without calling witnesses.  During closing arguments, both sides referenced Jasper's prior convictions. The State acknowledged, at the outset of its argument, that Jasper was a convicted felon.  But the State then asserted that "when someone breaks in your home and points a gun at you," the fact you have a felony history does not mean "you are not to be believed, you are not eligible to be a victim."  In response, defense counsel argued to the jury that "[h]aving a felony conviction in and of itself allows

you to question someone's credibility" and emphasized that Jasper's prior felony dealt "specifically with dishonesty." Counsel told the jurors this should "play into [their] determination of whether or not [they] can trust what he's saying." As to the State's version of what happened, defense counsel asked the jury to consider that it was "just as possible" that Kujawa "went over to collect a debt that he was owed" and "instead of breaking into the house, [Kujawa] was invited in."

[¶19.] During jury deliberations, the jury submitted a written question to the court. The court met with counsel to discuss a response and then provided a written response directing the jurors to review certain instructions, identified by the court, that the court had previously given to the jury. After additional deliberations, the jury returned a verdict finding Kujawa guilty of both counts. The court later sentenced him to 12 years in the penitentiary on each count, to be served concurrently.

[¶20.] Kujawa appeals, raising three issues, which we restate as follows:

1. Whether the circuit court abused its discretion in limiting evidence of Jasper's prior convictions under SDCL 19-19-609.

2. Whether Kujawa's constitutional right to confrontation was violated.

3. Whether the circuit court abused its discretion in responding to the jury's question.

**Standard of Review**

[¶21.] We review a circuit court's evidentiary rulings for abuse of discretion. *State v. Rudloff*, 2024 S.D. 73, ¶ 32, 15 N.W.3d 468, 481 (citing *State v. Harruff*, 2020 S.D. 4, ¶ 14, 939 N.W.2d 20, 25). Likewise, a circuit court has "considerable

discretion in responding to jury requests during deliberations, and on appeal, [its] decision will not be disturbed except for abuse of discretion." *State v. Hillyer*, 2025 S.D. 30, ¶ 24, 23 N.W.3d 782, 790 (citation omitted). "An abuse of discretion is 'a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration is arbitrary or unreasonable.'" *Rudloff*, 2024 S.D. 73, ¶ 32, 15 N.W.3d at 481 (citation omitted). "Under the abuse of discretion standard, 'not only must error be demonstrated, but it must also be shown to be prejudicial.'" *Id.* (citation omitted). "To establish prejudice, one must show there is 'a reasonable probability that, but for [the error], the result of the proceeding would have been different.'" *State v. Spry*, 2026 S.D. 21, ¶ 28, 34 N.W.3d 192, 201 (alteration in original) (quoting *State v. Carter*, 2023 S.D. 67, ¶ 26, 1 N.W.3d 674, 686).

### Analysis and Decision

**1.** ***Whether the circuit court abused its discretion in limiting evidence of Jasper's prior convictions under SDCL 19-19-609.***

[¶22.]     On appeal, Kujawa contends the circuit court abused its discretion when it limited the evidence that could be admitted under SDCL 19-19-609 (Rule 609) with respect to Jasper's prior convictions.[4]  He argues the court applied a

---

4.     SDCL 19-19-609 (Rule 609) states in pertinent part:

> **(a) In general.**  The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>> (1)     For a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

(continued . . .)

"blanket rule" that impermissibly restricted the evidence to the fact that Jasper had

been convicted of two felonies, without being named, and that one of them was for a

crime of dishonesty. Kujawa further argues that the court should have permitted

him "to elicit, at minimum, testimony related to the dates, statutory names, and

nature of Jasper's convictions." He asserts that the court erred because it failed to

perform a balancing test under SDCL 19-19-403 (Rule 403) before determining what

evidence regarding Jasper's convictions would not be admissible. Before addressing

the circuit court's ruling, we first review the rule and make some general

observations about its applicability.

_____

(. . . continued)

        (A)     Must be admitted, subject to § 19-19-403, in a civil case or in a criminal case in which the witness is not a defendant; and
        (B)     Must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant; and
    (2)     For any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.
  **(b) Limit on using the evidence after 10 years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
    (1)     Its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
    (2)     The proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

### a.    Rule 609

[¶23.]    Rule 609 is an evidentiary rule that governs impeachment with evidence of a witness's criminal conviction for the purpose of attacking the witness's character for truthfulness.  This version of our rule, which mirrors current Federal Rule of Evidence 609, was adopted as Supreme Court Rule 15-42 and became effective January 1, 2016.  *See* 2016 S.D. Sess. Laws ch. 239.  It was one of several amendments to the rules of evidence in SDCL Title 19.  *Id.*  Prior to this, the rule governing impeachment with a conviction was found in SDCL 19-14-12.[5]  *See State v. Swallow*, 405 N.W.2d 29, 36 n.1 (S.D. 1987) (quoting SDCL 19-14-12).

[¶24.]    Our current Rule 609 differs from SDCL 19-14-12 in several respects. Under SDCL 19-14-12, before a court could allow convictions to be admitted into evidence for the purpose of attacking the credibility of a witness, it was required to "make a definite finding that the prior convictions are more probative than prejudicial."  *State v. Cross*, 390 N.W.2d 564, 566 (S.D. 1986) (citations omitted). The assessment, under SDCL 19-14-12, allowed for a consideration of the

---

5.    Former SDCL 19-14-12 provided:

> For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party or the accused and the crime
>
> > (1)    was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or
> > (2)    involved dishonesty or false statement, regardless of the punishment.

prejudicial effect to "a party" or to "the accused." *See Swallow*, 405 N.W.2d at 36 (noting the distinction between SDCL 19-14-12 and the then-existing version of the federal rule, which referred only to a court weighing the probative value versus the potential prejudice to *the defendant*).

[¶25.]     In contrast, the current version of Rule 609 applies a different balancing requirement for determinations of whether evidence of a conviction will be admitted, depending on the nature of the conviction and the type of witness. *See generally* 28 Wright & Miller's Federal Practice & Procedure §§ 6134−6135 (2d ed.), Westlaw (database updated April 2026) [hereafter Wright & Miller] (discussing federal rule). With respect to crimes that are felonies, Rule 609(a)(1)(A) requires evidence of a witness's prior felony conviction to be admitted where the witness is testifying in a civil case or in a criminal case in which the witness is not the defendant on trial—with the caveat that admission of such evidence is "subject to" the rule permitting a court to exclude otherwise relevant evidence if its probative value is substantially outweighed by unfair prejudice or other identified dangers. *See* SDCL 19-19-403.[6] However, the balancing standard is different if the witness is a defendant testifying in his or her own criminal case. In that instance, under Rule

---

6.     SDCL 19-19-403 (Rule 403) states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

609(a)(1)(B), evidence of a felony conviction must be admitted if "the probative value of the evidence outweighs its prejudicial effect to that defendant."[7]

[¶26.] Another key distinction between current Rule 609 and SDCL 19-14-12, which is most relevant in this case, is the treatment of crimes of dishonesty. Under Rule 609(a)(2), "[f]or any crime regardless of punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." This language has been interpreted as applying to a "fairly narrow subset of criminal activity[.]" Christopher B. Mueller and Laird C. Kirkpatrick, 3 Federal Evidence § 6:46 (4th ed.), Westlaw (database updated July 2025); *see generally id.* §§ 6:46–6:47 (describing how the 2006 amendments to Federal Rule of Evidence 609 suggest a more limited approach when considering what crimes are included in subsection (a)(2)); *see also* Wright & Miller § 6135. When determining whether a conviction meets the requirements of this subsection, a circuit court should be careful not to turn the process into "a 'mini-trial' in which the court plumbs the record of the previous proceeding" regarding the details of the prior conviction.[8] *See* 1 McCormick on Evidence § 42 n.31 (9th ed.), Westlaw (database

---

7. Unlike the Rule 403 balancing required under Rule 609(a)(1)(A) when a court considers whether to preclude a witness's prior conviction, evidence of a criminal defendant's prior conviction can be precluded under Rule 609(a)(1)(B) without a heightened showing that the probative value is "substantially" outweighed by "unfair prejudice" or other Rule 403 concerns. Instead, a defendant's felony conviction can be precluded if its probative value does not outweigh the prejudicial effect.

8. In this case we need not analyze whether Jasper's grand theft crime met this subsection, as all parties and the court treated it as though it did.

updated February 2025) (quoting Federal Rule of Evidence 609 advisory committee's note to 2006 amendment). If the crime falls within subsection (a)(2), no weighing or balancing need occur before evidence of the conviction is admitted. *See id.* § 42 n.10; *United States v. Collier*, 527 F.3d 695, 700 (8th Cir. 2008) (citation omitted).

[¶27.] However, for a conviction to be admitted—under either subsection (a)(1) or (a)(2)—the court must also consider whether it is too remote in time, i.e. "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." SDCL 19-19-609(b). In that case, evidence of such a conviction is admissible only if the court finds that "[i]ts probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect" *and* the proponent seeking admission of the evidence "gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." *Id.*; *see Rudloff*, 2024 S.D. 73, ¶¶ 45, 51, 15 N.W.3d at 484, 487 (affirming the circuit court's exclusion of witness's 22-year-old conviction for false reporting, where the circuit court determined the conviction had no probative value and there was danger of confusing the jury).[9]

---

9. Here, Jasper was convicted of grand theft in 2002, some 23 years prior to Kujawa's trial. Although defense counsel described Jasper as having been discharged from the Department of Corrections in 2016, it is not evident in the record when Jasper was released from physical "confinement" in that case. *See United States v. Stoltz*, 683 F.3d 934, 939 (8th Cir. 2012) (rejecting the argument that the ten-year period in Federal Rule of Evidence 609(b) commenced upon discharge from probation, noting that the phrase "release from confinement" means release from *physical* confinement). However, the State did not argue below that the conviction was too remote such that the balancing under Rule 609(b)(1) was required. Therefore, we need not address

(continued . . .)

### b.    Scope of the evidence

[¶28.]    This case presents the first opportunity in which we have been asked to interpret how the provisions of Rule 609, effective in 2016, relate to a defendant's claim that a circuit court abused its discretion in limiting the scope of information that could be admitted to impeach a witness with a prior conviction.  The issue here is what *type of evidence* is properly admitted, and excluded, when a conviction is used for impeachment purposes under Rule 609(a).  We note that the language of Rule 609 refers only to "evidence of a criminal conviction" and does not specify what type of evidence that entails.  We have recognized that, "[a]lthough federal interpretations of these rules [of evidence] are not binding on us, it is helpful to 'turn to the federal court decisions for guidance in their application and interpretation.'"  *State v. Wright*, 1999 S.D. 50, ¶ 13 n.4, 593 N.W.2d 792, 798 n.4. (citation omitted)

[¶29.]    In his brief, Kujawa relies on decisions from federal courts interpreting Federal Rule of Evidence 609(a) in support of his argument that the circuit court erred in "applying a 'blanket rule' which deemed the nature of Jasper's felony convictions to be 'categorically inadmissible.'"  *See United States v. Howell*, 285 F.3d 1263, 1266–67, 1270 (11th Cir. 2002) (concluding that the district court erred in limiting evidence of prior convictions of prosecution witnesses admitted under Rule 609(a)(1) by making "a blanket ruling that the fact and date of the witnesses' felony convictions could be admitted but nothing else," without performing the required

---

(. . . continued)
the applicability of this subsection or the remoteness of the conviction at issue here.

balancing). The court in *Howell* held that "ordinarily, evidence of a witness's felony conviction shall include information about the nature of that conviction unless, after Rule 403 balancing, the probative value of such evidence is outweighed by its prejudicial effect." *Id.* at 1268−69.

[¶30.] The Second Circuit Court of Appeals similarly ruled that the district court erred when it limited the evidence of government witnesses' convictions admitted under Federal Rule of Evidence 609, "as a matter of policy, to the fact and date of their felony convictions without permitting inquiry into the statutory names of the . . . offenses of conviction." *United States v. Estrada*, 430 F.3d 606, 615 (2nd Cir. 2005). The court noted that evidence of a criminal conviction under Rule 609(a)(2), which is "*per se* probative of credibility," should include the "essential facts" of the convictions, including "the statutory name of each offense" and "the date of conviction[.]" *Id.* at 615 (citation omitted). The court further determined that the same principle would apply to convictions falling under Rule 609(a)(1), noting that such essential facts are "presumptively required by the Rule, subject to balancing under Rule 403."[10] *Id.* at 616 (citations omitted) (recognizing the propriety of considering "essential facts" of a conviction, while limiting evidence of underlying facts or details of the crime); *see* Wright & Miller § 6134 (noting that

---

10. Some federal court decisions, including *United States v. Estrada*, include the "sentence imposed" in the list of essential facts that are presumptively admissible. 430 F.3d 606, 615 (2nd Cir. 2005). However, we do not adopt this view. There may be factors underlying a given sentence that have little to do with a witness's character for truthfulness. While courts have the discretion to admit evidence of the sentence, they should be cognizant of the possibility that admitting such evidence could, in some cases, inadvertently open the door to further questions necessitating the application of other evidentiary rules such as SDCL 19-19-404(a) and (b).

"the 'mere fact' approach is hardest to justify with the language and structure of Rule 609") *and* 4 Weinstein & Berger, Weinstein's Federal Evidence § 609.20[2] (2025 update) (noting federal decisions supporting the view that "Rule 609(a)(1) requires the trial court to admit evidence of the nature and date of each conviction, subject to Rule 403 balancing").

[¶31.] These authorities support the principle that a "blanket rule" allowing the admission of only the fact that a witness has been convicted of an unnamed felony under Rule 609(a)(1) or an unnamed crime of dishonesty under Rule 609(a)(2) is not proper. With respect to crimes of dishonesty admitted under Rule 609(a)(2), the essential facts—the name or nature of the offense and the date of conviction—should be admitted. For convictions admitted under Rule 609(a)(1), these essential facts may be admitted, subject to a proper balancing of the probative value of such evidence versus the prejudicial effect, or other Rule 403 concerns. Courts retain broad discretion under Rule 609(a)(1) to exclude evidence of the nature of the offense if the balancing weighs against the admission of such facts. *See, e.g.*, *United States v. Ford*, 17 F.3d 1100, 1103 (8th Cir. 1994) (upholding the district court's ruling allowing the jury to be informed that the witness had a felony conviction, but excluding the specific nature of the offense—a sex offense against a minor—as overly prejudicial).

[¶32.] On a final note, we observe that many of the cases and secondary sources addressing this issue refer to both the name and nature of the offense; some courts refer to the statutory name of the crime when discussing the "nature" of the conviction, while others refer to a more general description of what the crime is. In

our view, it is not so clear that there is a meaningful difference between the two terms. But in any event, allowing a description of the crime does not mean that evidence of the underlying details of the conviction should be admitted, as the "*nature* of a conviction is distinct from the *specific facts and circumstances* underlying that conviction." *United States v. Lopez-Medina*, 596 F.3d 716, 737 n.16 (10th Cir. 2010) (citing *Howell*, 285 F.3d at 1268–69) (upholding admission of "the *nature* of the defendant's conviction, i.e., that it was for possession with intent to distribute methamphetamine"); *see Collier*, 527 F.3d at 700–01 (upholding the disclosure of the nature of the conviction, i.e., that it was credit card fraud); *United States v. Shelledy*, 961 F.3d 1014, 1023 (8th Cir. 2020) (observing that "[t]he ability to introduce the specific crime is not a license to flaunt its details" (alteration in original) (citation omitted)).

### c. Admission of Jasper's grand theft conviction

[¶33.]    We now address the circuit court's ruling in this case, but given the limited record the parties made below, we focus solely on the rulings related to Jasper's 2002 state conviction for grand theft.[11] When seeking a ruling allowing impeachment with this conviction, Kujawa argued it was admissible as a crime of dishonesty under Rule 609(a)(2) and the State did not disagree with this premise. The court granted Kujawa's request and ruled that the conviction was admissible.

---

11.    Kujawa makes a passing reference in his brief to the federal conviction, which the State indicated was for "possession of eagle feathers," and suggests the circuit court should have "inquired further" to determine the name, date, and nature of that conviction when making its ruling. But Kujawa did not make any record, nor present any arguments below, regarding the name or nature of that federal conviction. We therefore do not address it.

Kujawa argues that the court nevertheless erred by *limiting* the facts he wished to elicit with respect to this conviction, without conducting a Rule 403 balancing test. As to that point, we note that the court did not state its reasons for its initial ruling that no evidence would be admitted beyond the fact of the conviction and that it was a crime of dishonesty. Instead, it referred to this as its "standard ruling." Based on our interpretation of the current version of Rule 609, this blanket refusal to allow anything beyond the bare fact of conviction ("a felony conviction") with no principled basis for such a ruling constituted an abuse of discretion. This is particularly so where the conviction was admitted under subsection 609(a)(2).

[¶34.] However, it is evident from the record here that Kujawa's primary objective was not limited to eliciting the statutory name or general nature of the crime for impeachment purposes. Rather, he clearly sought to delve deeply into the underlying details of the grand theft case and admit this information as "prior bad acts" or character evidence to paint Jasper as a "con man." This is beyond what is permitted under Rule 609(a), which pertains only to the use of a *prior conviction* to impeach a witness's character for truthfulness.

[¶35.] Additionally, we note that the circuit court indicated during the hearing that it was leaving open the possibility that something more might be allowed, depending on how the trial unfolded. The court made it clear, however, that defense counsel would have to come forward with additional information to provide context for such a ruling. They did not do so, at least not based on the record before us. The only additional record defense counsel made was to memorialize the off-the-record bench conference regarding the claim that Jasper

"opened the door" by referring to his crime of dishonesty as a "white collar" crime.[12] But during this discussion, there was no additional information provided to the court regarding the nature of the grand theft case that would suggest that Jasper's characterization of the crime was false.[13]  Moreover, beyond the question the court had sustained—"What is a white-collar crime?"—defense counsel made no proffer on the record as to what additional information counsel wanted to solicit from Jasper. Under these circumstances, we see no error in the court's determination that Jasper had not opened the door to further impeachment, at least with regard to any attempt to elicit the underlying details of the crime.

[¶36.]	To the extent the circuit court abused its discretion in limiting the evidence of the essential facts of the conviction by not allowing disclosure of what the crime was, we must address whether Kujawa has established prejudice warranting a reversal.  In his appellate briefs, Kujawa has made little or no argument to meet his burden to show there is a "reasonable probability" the outcome of the trial would have been different had the jury been told that Jasper's crime of dishonesty was a grand theft.  *Spry*, 2026 S.D. 21, ¶ 28, 34 N.W.3d at 201

---

12.	Some authority exists to support the principle that additional "relevant details of the crime *may* be admissible if the witness attempts to deny or minimize his or her guilt."  *See* 4 Weinstein's Federal Evidence § 609.20[2] (2025 update) (emphasis added); *see also United States v. Collier*, 527 F.3d 695, 700 (8th Cir. 2008) (noting that the government was permitted, during cross examination, to solicit additional information regarding the actual amount of restitution the witness was required to pay in his prior criminal case, where he minimized his culpability during his direct examination by significantly understating the amount).  But that did not occur here.

13.	Black's Law Dictionary defines white-collar crime as "[a] nonviolent crime usu. involving cheating or dishonesty in commercial matters."  *White-collar crime*, Black's Law Dictionary (12th ed. 2024).

(citation omitted). The only argument he makes is that Jasper's description of his grand theft conviction as a "white collar crime" may have left the jury with a "dishonest characterization." But he has failed to explain why Jasper's grand theft crime could not be considered a "white collar crime" or why the jury would consider this to be a minimization of his admitted crime of dishonesty. Moreover, even if the court would have allowed Kujawa to elicit the fact that this conviction was for a grand theft, it is difficult to envision that the jurors would find Jasper less credible if they were given this additional information. Here, the jury was made well aware that Jasper had two felony convictions, with one of them being a crime of dishonesty for which he was convicted in 2002. Telling the jury Jasper was convicted of a crime of dishonesty likely had more impact on the matter of his character for truthfulness than simply referring to the statutory name of the offense, particularly given that many types of theft do not involve an act of dishonesty.

[¶37.]     It is also noteworthy that the State began its closing argument by telling the jury it would "have to trust the word of a convicted felon." Defense counsel's closing argument also highlighted the fact that Jasper's felony conviction dealt "specifically with dishonesty" to argue he was not to be believed. But more importantly, the reference to Jasper's prior convictions was not the only impeaching evidence the defense relied on. Defense counsel cross-examined Jasper regarding inconsistent statements he made to law enforcement describing what occurred during the incident; counsel also contrasted these statements with his trial testimony, which differed in some respects. Impeachment of Jasper on the

statements that relate directly to the crime at issue was more likely to impact the jury's assessment of the events in question than his 2002 felony conviction.

[¶38.] Furthermore, while Jasper's credibility was clearly important, so too was Kujawa's. Although he did not testify, the jury heard about his lies to Officer Bright that he had not seen Jasper for months and that, after running an errand with Hansen that day, he was at Hansen's residence and did not go anywhere else. To the contrary, Hansen testified that Kujawa had not been with him. The jury also heard Hansen describe how he saw Kujawa walking toward Hansen's house and that Kujawa explained he had gone to confront Jasper about money he said he was owed, and when Kujawa knocked on the door, Jasper "fell on the floor" and "[s]tarted crying." It is apparent that the jury rejected this odd rendition and instead believed Jasper's account of what transpired—that he was on the floor and crying because Kujawa forced his way into the residence and threatened to kill him with a gun that was pointed at his head. This account was consistent with Jasper's demeanor and emotional state after the events, which was corroborated by Deedee and both officers. We therefore conclude Kujawa has not established prejudice warranting dismissal.

### 2. Whether Kujawa's constitutional right to confrontation was violated.

[¶39.] Kujawa argues the circuit court's limitation of his cross-examination of Jasper violated his rights under the Confrontation Clause of the United States Constitution. *See* U.S. Const. amend. VI. He acknowledges that he did not present this constitutional claim below and therefore asks the Court to review this unpreserved issue for plain error. *State v. Clemensen*, 2025 S.D. 68, ¶ 48, 28

N.W.3d 902, 918 (citation omitted) (noting that "[w]hen issue is not preserved for appeal, this Court is limited to a review for plain error").

[¶40.] "We invoke our discretion under the plain error rule cautiously and only in exceptional circumstances." *State v. Krueger*, 2020 S.D. 57, ¶ 38, 950 N.W.2d 664, 674 (quoting *State v. McMillen*, 2019 S.D. 40, ¶ 13, 931 N.W.2d 725, 729). "To establish plain error, an appellant must show (1) error, (2) that is plain, (3) affecting substantial rights; and only then may this Court exercise its discretion to notice the error if, (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *McMillen*, 2019 S.D. 40, ¶ 13, 931 N.W.2d at 729–30). We have explained that, under plain error review, an appellant "must prove prejudice." *State v. Guziak*, 2021 S.D. 68, ¶ 22, 968 N.W.2d 196, 203. "Without the additional showing of prejudice, the error does not affect substantial rights under the third prong of plain error review." *Id.* (citation modified). Furthermore, we have held that not only must error be shown, but it must be "plain," which we have described as "clear or obvious." *McMillen*, 2019 S.D. 40, ¶ 23, 931 N.W.2d at 732 (citations omitted) (noting caselaw which holds that "there can be no plain error to review when neither the Supreme Court nor this Court had resolved the issue beyond debate" (citation modified)).

[¶41.] We must, therefore, assess whether Kujawa has established that the circuit court's limitation on his cross-examination created an error that clearly or obviously violated the Confrontation Clause. We have held that a "circuit court retains broad discretion concerning the limitation of cross-examination." *State v. McCahren*, 2016 S.D. 34, ¶ 25, 878 N.W.2d 586, 597 (citation modified).

Furthermore, we have recognized that the Confrontation Clause is "generally satisfied when the defense is given a full and fair opportunity to probe and expose a witness' infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *State v. Kryger*, 2018 S.D. 13, ¶ 14, 907 N.W.2d 800, 808 (quoting *State v. Spaniol*, 2017 S.D. 20, ¶ 24, 895 N.W.2d 329, 338).

[¶42.] Kujawa argues that "the circuit court committed plain error because it significantly limited [his] ability to confront Jasper with his criminal history." He argues that "[a] reasonable jury may have interpreted Jasper's testimony differently had [his] counsel been permitted to pursue the line of questioning." Beyond these conclusory statements, however, Kujawa does not establish how the circuit court's ruling plainly rose to the level of a constitutional violation. "It is well settled that the right to cross examine is not absolute." *State v. Karlen*, 1999 S.D. 12, ¶ 38, 589 N.W.2d 594, 602. "An individual is only guaranteed 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Kryger*, 2018 S.D. 13, ¶ 16, 907 N.W.2d at 808 (quoting *Spaniol*, 2017 S.D. 20, ¶ 29, 895 N.W.2d at 340).

[¶43.] Kujawa has failed to demonstrate that he was denied a full and fair opportunity to call into question Jasper's credibility. The jury heard that Jasper had been convicted of two felonies, with one being a crime of dishonesty, which Kujawa later called to the jury's attention during closing argument. Additionally, as noted above, Kujawa extensively cross-examined Jasper regarding alleged inconsistencies between his testimony and other evidence presented at trial.

Kujawa fails to present any authority from this Court that establishes "beyond debate" that his inability to cross-examine Jasper to the extent he wished—by inquiring into *additional* details regarding Jasper's convictions—was a "clear or obvious" error rising to the level of a Confrontation Clause violation. *See McMillen*, 2019 S.D. 40, ¶ 23, 931 N.W.2d at 732 (describing what constitutes an error that is "plain"). Therefore, "we need not address the remaining plain error review considerations." *State v. Richter*, 2025 S.D. 58, ¶ 22, 27 N.W.3d 777, 786.

### 3. *Whether the circuit court abused its discretion in responding to the jury's question.*

[¶44.] During jury deliberations, the jury submitted the following written question to the circuit court: "Is a guilty verdict possible on Count One First Degree Burglary, if there is a reasonable doubt as to the involvement of a weapon?" The court convened the parties to discuss an appropriate response. Defense counsel argued that the jury was asking a "question of law" and that the court should respond directly by telling the jury, "no, you cannot convict if you do not believe beyond a reasonable doubt that a weapon was used." The State disagreed with defense counsel's proposal and argued the answer could be found in the jury instructions previously given, specifically Instructions 17 and 28.

[¶45.] Instruction 17 contained the elements of the crime of first-degree burglary, "each of which the State must prove beyond a reasonable doubt," and included the element that "[t]he defendant unlawfully entered or unlawfully remained [in an occupied structure] with the intent to commit the crime of aggravated assault." Instruction 28 stated in its entirety:

> An element of the crime of First-Degree Burglary is that the unlawful entering or unlawful remaining in an occupied structure was with the specific intent to commit the crime of aggravated assault, that is, with the specific intent to attempt by physical menace *with a deadly weapon* to put another in fear of imminent serious bodily harm. The offense is complete when the unlawful entering or unlawful remaining is made with such specific intent regardless of whether the aggravated assault is committed.

(Emphasis added.) Kujawa's counsel indicated that, if the court was inclined to refer to Instruction 28, the court should also include Instruction 28A, which addressed specific intent.

[¶46.] The circuit court pointed to the language of Instruction 28 and noted that a "juror could read that and understand that . . . it would be a factual impossibility to menace someone with a deadly weapon if there's no deadly weapon." The court determined it would respond to the jury, in writing, that "[t]he jury is instructed to review Instructions 17, 28, and 28A."

[¶47.] On appeal, Kujawa argues the court abused its discretion by not answering the jury's question directly, in the manner he requested. He argues that the court's failure to provide a specific answer lacked clarification that "*all* elements must be proven beyond a reasonable doubt to return a guilty verdict" and "allowed the jury's confusion to impact the verdict." He asserts that "[h]ad the circuit court properly informed the jury that the involvement of a weapon was an element the State must prove beyond a reasonable doubt, the jury would have returned a different verdict."

[¶48.] We have recognized that, when considering a jury's question, "[i]f the court in the exercise of sound discretion concludes that information or further

instructions are not required, it may properly refuse such a request." *Hillyer*, 2025 S.D. 30, ¶ 25, 23 N.W.3d at 790 (citing *State v. Rhines*, 1996 S.D. 55, ¶ 178, 548 N.W.2d 415, 454). Moreover, where "the jury instructions are correct statements of the law, no further instruction is necessary" and the court may "properly [refer] the jury to those instructions." *Id.* (quoting *State v. Schrempp*, 2016 S.D. 79, ¶ 25, 887 N.W.2d 744, 751 for the principle that "[r]eferring the jury to instructions already given is not error").

[¶49.] The instructions referenced by the court in its response were agreed to by both parties during settling of instructions. Together, Instructions 17, 28, and 28A accurately explained the elements of first-degree burglary and that in order to convict Kujawa of this count, the jury must find, beyond a reasonable doubt, that Kujawa acted "with the specific intent to attempt by physical menace *with a deadly weapon* to put another in fear of imminent serious bodily harm."[14] "We presume that juries follow their instructions[.]" *State v. Black Cloud*, 2023 S.D. 53, ¶ 43, 996 N.W.2d 670, 682 (citation omitted). The circuit court did not abuse its discretion in answering the juror's question.

[¶50.] We affirm.

---

14. Other instructions provided further direction for the jury. For example, Instruction 14 reads, in part, that the State has the burden to prove "every element of the offense charged beyond a reasonable doubt" and that if reasonable doubt exists, "your verdict must be not guilty." Instruction 39 told the jury that "[i]f any member of the jury has any reasonable doubt . . . upon any single fact or element necessary to constitute the offense charged as defined for you by the court, then it is that juror's duty to give the Defendant the benefit of the doubt and vote for a verdict of not guilty on that charge."

#31189

[¶51.]     JENSEN, Chief Justice, and SALTER, MYREN, and GUSINSKY,

Justices, concur.